# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHUAN PHU PHAM, | : Civil No. 3:22-cv-344 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| MS. H. WALTERS, et al., | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Anthuan Phu Pham ("Pham"), a former inmate[1], who was housed at all relevant times at the United States Penitentiary, Canaan, Pennsylvania, ("USP-Canaan"), initiated this action pursuant to *Bivens*[2], 28 U.S.C. § 1331. Named as Defendants are Dr. Diane Sommer, Acting Clinical Director; Jeremy Simonson, Health Service Assistant; Heather Walters, Physician Assistant; Eric Bradley, Warden, and Dr. S. Mowatt. Presently ripe for disposition is a motion (Doc. 23) to dismiss and for summary judgment by Defendants Sommer, Simonson, Walters, and Bradley. For the reasons set forth below, the Court will grant the motion for summary judgment. The Court will also dismiss the action against Dr. Mowatt pursuant to Federal Rule of Civil Procedure 4(m).

---

[1] Pham has been released from custody. *See* Federal Bureau of Prisons Inmate Locator, available at: https://www.bop.gov/inmateloc/ (last accessed January 4, 2023).

[2] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court created a limited federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

I.  **Statement of Undisputed Facts[3]**

Pham arrived at USP-Canaan on October 28, 2019. (Doc. 24 ¶ 23). During his intake health screen on October 28, 2019, Pham indicated he had been shot nine times in May 2016 and was subsequently prescribed pain medication for his chronic pain. (*Id.* ¶ 24). Those medications were continued at the same dosage. (*Id.*).

On January 7, 2019, Dr. Mowatt completed a 14-day Physician Evaluation, during which Pham complained of his right-hand deformity, advised that he had been evaluated by a hand surgeon but was informed he was not a surgical candidate, and reported he had broken his clavicle on the left side. (*Id.* ¶ 25). Dr. Mowatt maintained Pham on his pain medications and requested a consult for EMG testing due to left arm numbness and radiculopathy. (*Id.* ¶ 26). Pham was placed into the orthopedic/rheumatology Chronic Care Clinic following this encounter. (*Id.* ¶ 27).

On December 9, 2019, Pham reported that his chronic pain had not responded well to the medications. (*Id.* ¶ 28). Nurse Practitioner O'Connor increased his pain medications, prescribed use of a cane, and scheduled Pham for a follow-up in a month. (*Id.*). Dr. Mowatt

---

[3] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 24). Pham did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1; *see also* Doc. 30 ¶ 3 (advising Pham that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

co-signed the order and authorized the increase of pain medications and cane prescription. (*Id.*).

On January 19, 2020, Pham refused his pain medications and became "verbally aggressive/threatening towards medical staff" and stated his desire to go on Wellbutrin, a non-pain medication. (*Id.* ¶ 29).

On February 3, 2020, Pham underwent an EMG, which showed a neuropathy in his bilateral upper extremities and that his condition was chronic and that his "[symptoms] can be managed, but not cured." (*Id.* ¶ 30).

On February 12, 2020, Pham's cane was taken from him after he was seen repeatedly not using it. (*Id.* ¶ 31). He admitted that he did not need it all the time. (*Id.*).

On April 28, 2020, although acknowledging that the pain medication regimen had been "very helpful", Pham was again evaluated for chronic pain. (*Id.* ¶ 32). His pain medications were adjusted to allow bedtime ingestion because he reported they caused "daytime drowsiness." (*Id.*).

On June 1, 2020, physician assistant, certified ("PA-C") Walters renewed Pham's pain medications at the same dosage. (*Id.* ¶ 33).

On June 5, 2020, Pham was observed diverting his pain medication by prison staff. (*Id.* ¶ 34). As a result, two of his pain medications were discontinued on June 11, 2020. (*Id.*).

3

On August 12, 2020, Pham was evaluated due to suspicion that he had ingested illicit drugs. (*Id.* ¶ 35).

On October 16, 2020, Pham refused pain medications. (*Id.* ¶ 36). His continued refusals and poor compliance reflected that no "benefit of medication prescribed is possible" and his medications were discontinued pursuant to the pill line procedure. (*Id.*).

On February 2, 2021, Dr. Buschman evaluated Pham in the Chronic Care Clinic, during which Pham reported he had 5/10 aching pain in multiple areas and demanded Wellbutrin and Gabapentin. (*Id.* ¶ 37). Dr. Buschman advised Pham that his recent diversion rendered him ineligible for Gabapentin but nevertheless offered to change Pham's medication regimen. (*Id.* ¶ 38). Pham declined that offer, and Dr. Buschman renewed Pham's pain medications. (*Id.*).

On March 3, 2021, Pham complained of pain and requested a dose increase. (*Id.* ¶ 39). As he had been complying with pill line, PA-C Carey increased his dosage. (*Id.*). Dr. Sommer co-signed the increase. (*Id.*).

On June 24, 2021, Pham was seen for sick call, during which he reported ongoing chronic lower back pain secondary to the gunshot wound before his incarceration and noted that trigger point injections had historically provided relief. (*Id.* ¶ 40). PA-C Carey prescribed new pain medications and ordered an x-ray of Pham's lumbar spine. (*Id.*).

On July 10, 2021, Pham was involved in an inmate-on-inmate altercation. (*Id.* ¶ 41). He was evaluated in health services for injuries and reported a superficial laceration on his

neck, denied any further injuries, and made no additional complaints. (*Id.*). Pham was involved in another inmate-on-inmate altercation on July 18, 2021, which required the use of chemical munitions and his placement in ambulatory restraints. (*Id.* ¶ 42). He was evaluated in health services for injuries and reported he generally "hurt everywhere." (*Id.*).

On August 10, 2021, Pham requested band-aids and bacitracin for small wounds on his lower extremities. (*Id.* ¶ 43). He complained of no other issues. (*Id.*). PA-C Walters performed an evaluation and noted Pham's wounds were healing well and had no erythema, swelling, or signs of infection. (*Id.*). PA-C Walters provided band-aids and bacitracin. (*Id.*).

On August 31, 2021, PA-C Carey reviewed the results of Pham's lumbar x-ray, which revealed degenerative changes. (*Id.* ¶ 44). She referred him for a CT scan in anticipation of trigger point injections. (*Id.*).

On November 2, 2021, Pham requested to increase his pain medication. (*Id.* ¶ 45). He was evaluated by PA-C Carey, who increased his pain medication and reminded Pham he had an upcoming consult with a non-BOP pain management specialist. (*Id.*).

On November 18, 2021, Pham underwent a lumbar CT scan, which revealed degenerative changes to his lumbar spine. (*Id.* ¶ 46).

On December 3, 2021, Pham was evaluated by a non-BOP pain management specialist, who offered medication recommendations. (*Id.* ¶ 47). Pham's pain medications were renewed on December 12, 2021. (*Id.* ¶ 48).

Pham complained of chronic lower back pain on January 4, 2022 and requested an MRI. (*Id.* ¶ 49). He was evaluated by certified registered nurse practitioner ("CRNP") Keelen, who referred Pham for an MRI. (*Id.*).

On February 3, 2022, Dr. Sommer submitted a request for a pain management consultation. (*Id.* ¶ 50).

On February 7, 2022, Dr. Chu evaluated Pham in the Chronic Care Clinic. (*Id.* ¶ 50). Dr. Chu renewed Pham's pain medication. (*Id.* ¶ 51).

On February 8, 2022, CRNP Keelen evaluated Pham for a medication refill and as a follow-up to Pham's pain management encounter. (*Id.* ¶ 52). CRNP Keelen renewed Pham's medications and added a new medication. (*Id.*). Dr. Sommer co-signed the order authorizing the new medication. (*Id.*).

On March 15, 2022, CRNP Keelen evaluated Pham, during which Pham reported pain. (*Id.* ¶ 53). CRNP Keelen referred Pham to a physician. (*Id.*).

On March 16, 2022, Dr. Sommer referred Pham for another pain management evaluation and requested that Pham be evaluated for bilateral medial branch block. (*Id.* ¶ 54). That evaluation was scheduled for May 11, 2022. (*Id.*).

On April 14, 2022, Dr. Chu evaluated Pham in the Chronic Care Clinic. (*Id.* ¶ 55). Dr. Chu renewed Pham's pain medication and continued the established treatment plan. (*Id.*).


## II. Legal Standards

### A. Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

7

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### B. *Bivens* Claims

A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975). To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III. Discussion

Defendants move for summary judgment on the following grounds: (1) Pham failed to exhaust his administrative remedies; (2) even if Pham had properly exhausted, he cannot establish an inadequate medical care claim; (3) Defendants Bradley and Simonson cannot be held liable as supervisors; and (4) Defendants are entitled to qualified immunity. (*See* Doc. 25). The Court decides Defendants' motion purely on the merits and does not reach the exhaustion issue.

### A. Qualified Immunity

The doctrine of qualified immunity protects a government actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* at 231. "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). The burden to establish qualified immunity rests with the defendant claiming its protection. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). In addressing Pham's Eighth Amendment claim, the Court only reaches the first prong of the qualified immunity analysis.

B.   **Eighth Amendment *Bivens* Claim**

For the delay or denial of medical care to rise to an Eighth Amendment violation, a prisoner must demonstrate: "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment...

10

(which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  A "failure to provide adequate care . . . [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

      Here, there is no evidence to permit the trier of fact to find that Defendants acted with deliberate indifference to Pham's serious medical needs.  While Pham asserts that Defendants failed to provide adequate medical care for the pain from his gunshot wound, the record is replete with evidence that he received continual medical care for his condition. Specifically, the record before the Court evinces that Pham reported his gunshot wound upon arrival at USP-Canaan and his prior medication was continued, he was admitted to the Chronic Care Clinic and received routine evaluations for his complaints, he underwent EMG nerve testing, an x-ray, CT scan, MRI, and medial branch testing, and he was referred to outside specialists for further treatment.  The record further reflects that Defendants continued to monitor and modify Pham's pain medication regimen.

Pham's primary complaint is that he received substandard medical care. This argument implies Pham's disagreement with a particular course of treatment and his own lay opinion regarding the proper course of treatment for his pain. However, mere disagreement with the selected course of treatment is not grounds for a medical deliberate indifference claim. *See Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (nonprecedential) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). To the extent that Pham asserts that Defendants' professional judgment was deficient, this also is not enough to rise to the level of a constitutional violation, and courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (citing *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762).

Moreover, Defendant Bradley is the Warden of USP-Canaan and is not a trained member of the medical staff. Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically based Eighth Amendment claims. *See, e.g., Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Because Pham was under the care of medical experts, Warden Bradley, the nonmedical Defendant, was justified in believing that he was in capable hands.

For all the foregoing reasons, Defendants are entitled to an entry of judgment in their favor on the Eighth Amendment medical care claim. Because Pham failed to establish an Eighth Amendment violation, Defendants are entitled to qualified immunity.

## C. Lack of Personal Involvement of Defendants Bradley and Simonson

Defendants also seek summary judgment on the *Bivens* claim against Defendants Bradley and Simonson based on a lack of personal involvement. The Court agrees that Pham failed to establish that Defendants Bradley and Simonson were personally aware that Pham had a serious medical need and that they knew of and disregarded an excessive risk to his health. *See Rode v. Dellarciprete*, 845 F.3d 1195, 1207 (3d Cir. 1988) (noting that "a defendant in a civil rights action must have personal involvement in the alleged wrongs"). In response, Pham avers that Defendants Bradley and Simonson are "supervisory liable in their chain of command." (Doc. 29, p. 2; *see also* Doc. 36, p. 3). Liability, however, "cannot be predicated solely on the operation of respondeat superior." *Rode*, 845 F.3d at 1207. Individual liability can be imposed only if the actor played an "affirmative part" in the alleged misconduct. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode*, 845 F.2d at 1207). Moreover, with respect to Bradley and Simonson's supervisory roles of Warden and Health Service Assistant, there are two theories: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had

knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). As to the second theory, a plaintiff must show that each defendant personally participated in the alleged constitutional violation or approved of it. *See C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). With respect to the first theory of supervisory liability, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Pham failed to establish that Defendants Bradley and Simonson had knowledge of and acquiesced in any alleged violations of his Eighth Amendment rights by their subordinates. *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). In fact, there are no allegations in the complaint against Defendants Bradley and Simonson. (*See* Doc. 1). Moreover, Pham failed to identify a policy that allegedly caused the violation of his constitutional rights. *See McTernan v. City of York*, 56 F.3d 636, 658 (3d Cir. 2009). Accordingly, insofar as Pham's claims against Defendants Bradley and Simonson rely on a *respondeat superior* theory of liability, they are entitled to judgment as a matter of law.

## IV. Federal Rule of Civil Procedure 4(m)

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m). Dr. Mowatt was named in the complaint that was filed on February 16, 2022 and, to date, has not been served in this case. The Court must engage in a two-step process in determining whether to dismiss the non-served Defendant or grant Pham additional time to effect service. "First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Good cause requires good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance with the time specified in the rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). In determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Id.* Although prejudice is a factor to be

considered, the absence of prejudice to the opposing party alone does not constitute good cause to excuse late service. *Id.*

In the present matter, Pham failed to establish good cause. After the expiration of the ninety-day time period set forth in Rule 4(m), the Court notified Pham that the action against Dr. Mowatt was subject to dismissal and directed him to show cause why the action against this Defendant should not be dismissed pursuant to Rule 4(m). (Doc. 44). Pham failed to respond to the Rule 4 show cause order, and his *pro se* status is not good cause to excuse his failure to timely serve this Defendant. *Veal v. United States*, 84 F. App'x 253, 256 (3d Cir. 2004). Based upon the lack of any reasonable explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Pham failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Pham's responsibility to properly identify all defendants, and provide accurate mailing addresses for the defendants, in a timely fashion. (*See* Doc. 10 ¶ 3) (advising Pham that failure to properly name a defendant, or provide an accurate mailing address for a defendant, may result in dismissal of the claims against that defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Pham's lack of good faith effort to serve Dr. Mowatt despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, the non-served Defendant will be dismissed from this action.

## V. Conclusion

The Court will grant the motion (Doc. 23) by Defendants Sommer, Simonson, Walters, and Bradley, and enter judgment in their favor. The Court will also dismiss the action against Dr. Mowatt pursuant to Federal Rule of Civil Procedure 4(m). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 4, 2023